UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EVERBANK, a Federal Savings Association,<br><br>    Plaintiff,<br><br>vs.<br><br>EDWARD WHEELER, CANYON COMMUNITY BANK NATIONAL ASSOCIATION; and NATIONAL TITLE COMPANY,<br><br>    Defendants. | Case No. 2:09-CV-1080-KJD-RJJ<br><br>**ORDER** |

    Presently before the Court is Plaintiff EVERBANK's Motion for Partial Summary Judgment against Defendant CANYON COMMUNITY BANK (#53).  Defendant has filed an Opposition (#60) to which Plaintiff filed a Reply (#63).  Also before the court is Defendant EDWARD WHEELER's Motion to Dismiss (#65) to which Plaintiff filed an Opposition (#67).

**FACTUAL BACKGROUND**

    Plaintiff EVERBANK and Defendant CANYON COMMUNITY BANK ("CCB") are parties to a Correspondent Agreement ("Agreement") made October 5, 2006.  Pursuant to the Agreement, CCB was to originate loans for EVERBANK.  CCB is designated as "Correspondent" throughout the Agreement. Under the terms of the Agreement, CCB was to assign its rights, title and interest in

loans to Everbank Wholesale Lending ("EBWL") in exchange for fees to be paid by EBWL.  CCB's warranties with each loan file submitted by CCB to EBWL included the representation and warranty that "each loan document is complete, accurate, and genuine, contains no untrue statement of a material fact, does not omit to state a material fact necessary to make it not misleading, and contains any and all signatures or initials required."  See Doc. No. 61-2, Correspondent Agreement, Section 3(B)(i).  The Agreement further provided that "Correspondent has complied with and observed the guidelines and legal requirements with regard to the loan"  See Paragraph 3(B)(v).

Paragraph 6 of the Agreement granted EBWL a reassignment privilege and imposed a purchase obligation on CCB under the following circumstances:

> If following EBWL's acceptance of an assignment, it is discovered that any representational warranty made herein is false and such falsity materially and adversely affects such loan, EBWL shall make and Correspondent shall accept, a reassignment of such loan whereupon Correspondent shall indemnify and hold EBWL harmless as provided in Paragraph 5 of this Agreement.  If, following loan closing, it is discovered that any representational warranty made herein is false and such falsity materially and adversely affects such loan, Correspondent shall, upon demand upon EBWL, purchase such loan from EBWL, at a price equal to the outstanding principal balance of such loan plus accrued interest and service release premium paid by EBWL.

Subsequent to the execution of the Agreement, Defendant CCB originated approximately 59 loans which were assigned to Plaintiff and thereafter funded.  However, among those loans is a residential real estate loan in which the Borrower, Defendant Edward Wheeler, allegedly received a $500,000.00 mortgage loan from EVERBANK after he and others impersonating him misrepresented, among other things, his cash assets, occupation and employment status.  Following the closing, Plaintiff sold the loan, however WHEELER made only a few payments on the loan, and foreclosure ensued.  Pursuant to its agreement with UBS, the purchaser of the WHEELER loan, EVERBANK was forced to repurchase the loan and thereafter sent a demand letter to CCB, demanding indemnity.  When CCB refused, EVERBANK commenced this litigation to recover its losses against Defendants CCB, National Title and WHEELER.

As to CCB, EVERBANK has asserted claims of breach of contract, negligence, fraud, breach of covenant of good faith and fair dealings, and unjust enrichment. Plaintiff seeks partial summary judgment only on its breach of contract claim.

Defendant CCB argues that the written agreement between the parties was modified as evidenced by their conduct and failure to perform the written agreement and, that in actuality, CCB acted as a broker, not as a correspondent, and that CCB relied on EVERBANK's performance as the sole underwriter. Defendant CCB asserts estoppel and waiver as defenses to the enforcement of the contract. CCB also asserts laches, lack of causation and lack of foreseeability as well as failure to mitigate damages.

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345

1  (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine
2  issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere
3  speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th
4  Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine
5  issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d
6  1054, 1061 (9th Cir. 2002).

7  Summary judgment shall be entered "against a party who fails to make a showing sufficient
8  to establish the existence of an element essential to that party's case, and on which that party will
9  bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted
10  if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248

## ANALYSIS

12  In support of its argument that the conduct of the parties modified the contract, Defendant
13  cites Florida law asserting that the parties to a contract, by their conduct, may modify the terms of an
14  agreement. However, the cases cited deal with mutual agreement, supported by consideration.
15  Defendant has not provided the Court with any evidence of a mutual agreement to modify the
16  contract or consideration supporting such a modification. Harrison v. City of Tampa, 247 F. 569
17  (S.D. Fla. 1918).

18  Defendant's' argument regarding ambiguity, and therefore the need to consider the conduct
19  and intentions of the parties, is without merit. With respect to the provisions in issue, the provisions
20  of the Agreement are unambiguous.

21  Dismissal or summary adjudication is appropriate for breach of contract claims if the contract
22  provisions or the contract in question is unambiguous. A contract or a provision of a contract is
23  ambiguous if it is reasonably susceptible to more than one interpretation. Castaneda v. Dura-Vent
24  Corp., 648 F.2d 612, 619 (9th Cir. 1981). "The question of the interpretation of a contract when the
25  facts are not in dispute is a question of law," to be decided by the court. Miller v. Kase, 789 So. 2d
26  1095 (Fla. Dist. Ct. App. 2001). If however, the court finds that a contract's terms are reasonably

susceptible to more than one interpretation, extrinsic evidence is admissible to determine the parties' true intent.

Determining the parties' true intent or the circumstances that may elucidate ambiguous language may require fact finding by the trier of fact. More specifically, when interpreting a contract, a court may consider surrounding circumstances, including negotiation, prior understandings, and subsequent conduct. If the court's inquiry into the parties' actual meaning of the contract does not resolve the issue, the intent of the parties in light of the competing interpretations of an ambiguous contract is a factual issue to be resolved by the jury. Therefore, dismissal or summary adjudication are improper where differing views of the parties' intent raise a genuine issue of fact. U.S. v. Sacramento Mun. Util. Dist., 652 F.2d 1341, 1344 (9th Cir. 1981).

The contract should be reviewed as a whole and all language given effect, and where the language is clear and unambiguous, the contract should be enforced as it reads. Leisure Resorts, Inc. v. City of West Palm Beach, 864 So. 2d 1163 (Fla. Dist. Ct. App. 2003). An examination of the Agreement fails to reveal any ambiguity in the language of the contract as it relates to the responsibilities of the parties.

Defendants' arguments regarding modification by course of conduct are contradicted by the terms of the Agreement at Paragraph 8 where the right to modify or amend the agreement is reserved to EBWL. A "course of dealings" may be considered to determine the meaning of a written agreement when terms are in doubt. Raytheon Subsidiary Support Co., Inc. v. Crouch, 548 So. 2d 781 (Fla. Dist. Ct. App. 1984). Defendant's arguments regarding waiver are precluded by Paragraph 14(H) which provides that waiver by EBWL of any breach of any provision of the Agreement shall not constitute a waiver of any breach of any other provision or any subsequent breach. Similarly, Defendant's argument regarding estoppel ignores the provisions of the contract and seeks to establish the defense of waiver which the contract precludes and which the Court has rejected. Defendant's arguments of ratification are also based on the concept of waiver. The defense of laches similarly fails because the demand for indemnity/repurchase was made within a reasonable time after Plaintiff

became aware of the fraud. Moreover, Defendant cannot show prejudice because a significant portion of the funds were lost as early as the close of escrow. The first payment was missed December 1, 2006 and Plaintiff made its demand in January 2008, a period of thirteen months. As stated, much of the loss occurred at the outset because Wheeler's financial statement had been falsified and money was diverted directly from Seller's proceeds. Although the loss was not recognized until the foreclosure sale, the loss actually occurred at the time of close of escrow. There was no prejudice to CCB from any delay in being informed of the facts by EVERBANK.

## CONCLUSION

The Agreement is unambiguous. Defendants failed to comply with the demand for indemnity, thereby breaching the terms of the Agreement. Defendant agreed to assume the risk of any fraudulent loan it submitted to Plaintiff. The Wheeler borrowings were fraudulent and there is no genuine issue of material fact that Defendant agreed to accept responsibility. Accordingly, the Plaintiff's Motion for Partial Summary Judgment (#53) with regard to its breach of contract claim against Defendant CCB is **GRANTED**.

With respect to Defendant WHEELER's Motion to Dismiss, the Motion does not identify any defect in the Complaint which would warrant dismissal under Rule 12. Accordingly, Defendant WHEELER's Motion to Dismiss (#65) is **DENIED**.

DATED this 30th day of March 2011.

_____
Kent J. Dawson
United States District Judge